[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 307.]

CUYAHOGA COUNTY BAR ASSOCIATION *v.* GRIFFIN.

[Cite as *Cuyahoga Cty. Bar Assn. v. Griffin*, 2000-Ohio-79.]

*Attorneys at law—Misconduct—Eighteen-month suspension with entire suspension stayed and attorney placed on probation—Engaging in conduct adversely reflecting on fitness to practice law—Neglecting an entrusted legal matter—Failing to carry out contract for professional services–Failing to deposit client funds in a separate bank account—Failing to promptly pay client on request funds client is entitled to receive—Failing to maintain complete records of all client funds coming into attorney's possession—Neglecting or refusing to assist or testify in disciplinary investigation.*

(No. 00-835—Submitted July 6, 2000—Decided November 15, 2000.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 98-75.

_____

{¶ 1} On October 7, 1999, relator, Cuyahoga County Bar Association, filed a third amended complaint charging respondent, Willie L. Griffin of Cleveland, Ohio, Attorney Registration No. 0038051, with several violations of the Code of Professional Responsibility and the Rules for the Government of the Bar. Respondent filed an answer, and the matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 2} The panel found that in November 1997, Ulysee Beltcher retained respondent and paid him a retainer of $1,500 to pursue a claim against Agency Homes for failing to make agreed repairs to his house. After respondent sent a letter to Agency Homes setting out Beltcher's claim, Beltcher was unable to contact respondent for about six weeks. When Beltcher finally reached respondent,

respondent said that he would file suit against Agency Homes as soon as Beltcher paid him $100 for the filing fee. Although Beltcher paid the $100 in February 1998, he heard no more from respondent until April or May 1998, when Beltcher went to respondent's home and asked why the suit had not been filed. Respondent agreed to file it right away. It was two months more before Beltcher was able again to contact respondent, who told him that Agency Homes did not respond to his certified letter and may have moved. Finally, on October 9, 1998, Beltcher filed a grievance with relator against respondent, unaware that respondent had filed the suit on Beltcher's behalf on October 5, 1998.

{¶ 3} In December 1998, relator requested that respondent respond to Beltcher's grievance. After relator made several attempts to contact him, respondent finally spoke with relator on January 14, 1999. At a subsequent meeting, respondent agreed to respond to the grievance and produce his entire file by February 5, 1999. Respondent failed to produce either a response or the file on that date. Respondent finally supplied relator with a portion of his file on September 14, 1999.

{¶ 4} The panel further found that in May 1996, Deborah Smith-Williams retained respondent and paid him $2,200 of an agreed $3,500 fee to represent her son, who had been charged with attempted murder. Without the consent of his client, respondent obtained a continuance of the trial set in December 1996, although there is evidence indicating that the court may have contacted respondent about a possible continuance. Respondent did not respond to Smith-Williams's request that he account for the work he had done for her son; instead, he withdrew as counsel and failed to return any of the retainer. After Smith-Williams contacted relator, respondent failed to respond to her contentions and failed to produce his file as requested by relator.

**{¶ 5}** The panel finally found that respondent did not deposit the funds he received from Beltcher and Smith-Williams in a separate bank account and failed to keep records regarding those funds.

**{¶ 6}** The panel concluded that during his representation of Beltcher, respondent violated DR 1-102(A)(6) (engaging in conduct that adversely reflects upon the lawyer's fitness to practice law), 2-106(A) (charging and collecting a clearly excessive fee for services rendered), 6-101(A)(3) (neglecting an entrusted legal matter), and 7-101(A)(2) (failing to carry out a contract for professional services). With respect to the money paid by Beltcher, the panel concluded that respondent violated DR 9-102(A)(2) (failing to deposit client funds in a separate bank account), 9-102(B)(3) (failing to maintain complete records of all client funds coming into his possession), and 9-102(B)(4) (failing to promptly pay to a client on request the funds which the client is entitled to receive). The panel further concluded that respondent's failure to cooperate with relator's investigations in both cases violated Gov.Bar R. V(4)(G) (neglecting or refusing to assist or testify in a disciplinary investigation).

**{¶ 7}** The panel recommended that respondent be suspended from the practice of law for six months, with all six months stayed in favor of probation. During probation, relator would appoint a monitor to assist respondent in the management of his law practice, and respondent would establish and maintain an IOLTA.

**{¶ 8}** The board adopted the findings of the panel and concluded that in the Beltcher matter respondent violated DR 1-102(A)(6), 6-101(A)(3), and 7-101(A)(2); however, the board found insufficient evidence to support a violation of DR 2-106(A). It concluded that respondent's handling of funds in the Beltcher matter violated DR 9-102(A)(2), 9-102(B)(3), and 9-102(B)(4), and that his handling of funds in the Smith-Williams matter violated DR 9-102(B)(3) and 9-102(B)(4). The board further concluded that respondent's failure to cooperate with

relator's investigations in both cases violated Gov.Bar R. V(4)(G). The board recommended that respondent be suspended from the practice of law for eighteen months, with all eighteen months of the suspension stayed in favor of probation on the conditions recommended by the panel.

_____

*Robert J. Vecchio, Mary Ann O. Rini* and *Ellen S. Mandell,* for relator.

*Bernard Redfield,* for respondent.

_____

***Per Curiam.***

{¶ **9**} We adopt the findings, conclusions, and recommendations of the board. Respondent is hereby suspended from the practice of law for eighteen months, with all eighteen months of the suspension stayed, and respondent is placed on probation. During the eighteen months of probation, relator shall monitor respondent's law practice, and respondent shall establish and maintain a trust account for client funds. A violation of the conditions of probation may result in the revocation of probation and reinstatement of any stayed suspension. Gov.Bar R. V(9)(E). Costs are taxed to respondent.

*Judgment accordingly.*

DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., and LUNDBERG STRATTON, J., dissent.

COOK, J., dissents.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ **10**} I respectfully dissent. I agree with the recommendation to suspend respondent from the practice of law for eighteen months. However, I would stay only twelve months of the suspension. I believe that respondent's egregious behavior and multiple violations of Disciplinary Rules warrant, at a minimum, an actual suspension of six months.

MOYER, C.J., concurs in the foregoing dissenting opinion.

––––––––––––––––––